UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMMY J. MOORE,
        Plaintiff,

v.                            Case No. 1:07-cv-1173

PETER LISZEWSKI, D. CATION,
C. BEASLEY,
        Defendants.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

    Before the court are the defendant Cation's and defendant Beasley's motion for summary judgment [89] and the plaintiff's response [102]. Richard Cation and Christine Beasley are both employed as Correctional Medical Technicians ("CMT") at Pontiac Correctional Center ("Pontiac"). The plaintiff, Sammy J. Moore, has submitted a complaint under 42 U.S.C. § 1983 against the defendants, Cation and Beasley [1]. The plaintiff alleges the defendants violated his rights under the Eighth Amendment to the United States Constitution by denying him adequate medical treatment. The plaintiff prays for the following relief: (1) a declaration by this court that the defendants violated his rights under the United States Constitution; (2) an injunction ordering the defendants to set a date for the plaintiff to see a doctor and receive pain medication; (3) an award of compensatory and punitive damages. The defendants, Cation and Beasley, by their attorney Lisa Madigan, have moved the court for an order dismissing the plaintiff's claim for the following reasons: (1) the plaintiff is not entitled to injunctive relief because he does not allege an ongoing violation of federal law; (2) the defendants were not deliberately indifferent to a serious medical need; **and** (3) the defendants are entitled to qualified immunity

### STANDARD

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*., 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than some "metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]. Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.,* 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on the flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## BACKGROUND

The plaintiff, an inmate currently incarcerated at the Menard Correctional Center, filed a complaint pursuant to 42 U.S.C. § 1983. The plaintiff alleges that the defendants, Cation and Beasley violated his Eight Amendment rights under the United States Constitution by showing deliberate indifference to his migraine headaches.

## UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff was transferred to Pontiac from Pinckneyville Correctional Center ("Pinckneyville") on March 2, 2007, the same day he fought with staff at Pinckneyville which resulted in two cuts in his scalp that required a total of ten stitches. (Complaint.)
2. At all times relevant to this complaint, the defendants, Cation and Beasley were employed as CMT's at Pontiac. (Complaint.)

---

[1] The exhibits can be found attached to the defendants' memorandum of law [89], except where otherwise noted. The plaintiff disputes many of the facts in his reply [102], however, he does not follow Local Rule 7.2 (b) (2) which states that each disputed material fact must be supported by evidentiary documentation referenced by specific page. The plaintiff includes a photograph of his injuries [Exhibit A] and his affidavit [Exhibit B] but fails to specifically reference the documentation in his response as required by the rule. The plaintiff therefore fails to provide any admissible evidence that can be used to refute the statements.

3. At all times relevant to this complaint, defendants, Cation and Beasley acted under color of state law. (Complaint; Answer).

4. In order to see a doctor for a non emergency [treatment] at Pontiac, an inmate must ask a Pontiac CMT to refer him to sick call, and the CMT must determine that the condition warrants referral to sick call. (Beasley Aff., par. 4.)

5. Under Pontiac's protocol, headaches are not considered an emergency that requires immediate referral to sick call. Protocol for such a complaint is to provide the inmate with a card of Tylenol. (Beasley Aff., par. 5.)

6. To obtain Tylenol, the inmate must provide a completed voucher authorizing the department to withdraw a $2 co-payment from his inmate trust account. This co-payment is required for any non emergency medical treatment. Although an inmate will not be denied treatment or Tylenol because he does not have money in his account, he must still provide the completed voucher. (Beasley Aff., par. 6, 7.)

7. Inmates obtain voucher forms from gallery officers. (Beasley Aff., par. 5.)

8. Because of the busy schedule of a CMT, the inmate must have their voucher forms completed and ready to give to the CMT before the CMT arrives at their cell. (Beasley Aff., par. 6.)

9. If the inmate continues to complain about headaches and exhibits appropriate symptoms, he may be placed on the sick call list to see a doctor. (Beasley Aff., par. 7.)

10. The inmate must provide the $2 co-payment voucher before he will be placed on the sick call list. (Beasley Aff., par. 7.)

11. The plaintiff alleges he began to have migraine headaches at the end of March 2007. (Plaintiff's Dep., p.28.)

12. Plaintiff's medical records show that his stitches were inspected and a new band-aid was applied by Pontiac's medical staff when he arrived at the institution on March 2, 2007. (Defendant's Ex. D4 and D5.)

13. The plaintiff was seen by a nurse on April 24, 2007, at which time his medical records were reviewed. There is no mention of any complaints from Plaintiff about any headaches. (Defendant's Ex. D6.)

14. The plaintiff appears to have been evaluated by Dr. Montwill, the optometrist on July 27, 2007, for complaints of blurry vision and migraine headaches. (Plaintiff's Dep., par. 17.)

15. On July 30, 2007, Dr. Mahone noted that Plaintiff complained of headaches, for which he had never requested a sick call. Dr. Mahone ordered that plaintiff be placed on sick call in the cell house that week. (Defendant's Ex. D7)

16. The defendant Cation saw plaintiff on August 4, 2007, at which time plaintiff requested to be placed on sick call for a migraine headache. The plaintiff provided the required $2 co-payment voucher and he was placed on the sick call list. (Cation Aff., par. 6).

17. The plaintiff was seen in sick call on August 7, 2007, at which time the plaintiff complained that he had been having headaches for four or five months. The staff physician who examined him found no significant abnormalities and made an assessment of self-reported headaches. The staff physician planned to order a skull x-ray and prescribed Tylenol. (Plaintiff's Dep., par. 21; D7; D8.)

18. An x-ray of the plaintiff's skull taken August 10, 2007, revealed no fracture or bony abnormalities. (Defendant's Ex. D17.)

19. Dr. Mahone made a note in the plaintiff's chart on August 24, 2007 that Tylenol was not helping the plaintiff and that he may need to be evaluated for possible migraine headaches. Dr. Mahone ordered that the plaintiff be scheduled for a sick call in the cell house that week. (Plaintiff's Dep., p. 23; D8).

20. A note in the plaintiff's medical records indicates that on August 28, 2009, the plaintiff refused to participate in sick call and also the plaintiff was advised to follow-up as needed. (Defendant's Ex. D9.)

21. On September 7, 2007, the plaintiff followed up with complaints to Dr. Montwill, the optometrist, about headaches and the evaluation of his vision. Dr. Montwill discussed using glasses for near activities only. (Plaintiff's Dep., par. 25; Sauerhage Aff.).

22. The plaintiff's medical records from Pontiac contain no other entries regarding complaints the plaintiff had about headaches. (Sauerhage Aff.)

23. Besides August 4, 2007, the plaintiff cannot specifically identify by date the other two days he claims he complained to defendant Cation about his headaches. (Plaintiff's Dep., p 49, 52.)

24. The defendant Cation does not recall any complaints about headaches from the plaintiff other than on August 4, 2007, for which he referred the plaintiff to sick call and plaintiff's medical records contain no entries of other complaints. (Cation Dep., par. 7; Sauerhage Aff.)

25. The plaintiff does not allege that he spoke with defendant Beasley on dates other than August 1, 2007 and August 13, 2007. (Plaintiff's Dep., p. 48-49.)

26. The plaintiff concedes that he did not have a completed money voucher for his $2 co-payment to give to the defendant Beasley on August 1, 2007 or August 13, 2007. In fact, the plaintiff told the defendant Beasley that he should not have to pay the co-payment. (Plaintiff's dep., p. 45, 48.)

27. The defendant Beasley does not recall the plaintiff asking her to refer him to sick call for a headache. (Beasley Aff., par. 9.)

28. The defendant Beasley could not have placed the plaintiff on the sick call list without the $2 co-payment voucher. (Beasley Aff., par. 9.)

29. The plaintiff was transferred from Pontiac to Menard Correctional Center on March 12, 2008. (Plaintiff's Dep., p. 6-7.)

30.  The plaintiff has never been diagnosed as having migraines.  Medical staff at Menard diagnosed the plaintiff as having "self-reported headache."  (Defendant's Ex. D16.)

DISCUSSION AND CONCLUSION

In order to recover damages under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution and the laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 49 (1988).  It is undisputed that the defendants acted under color of state law while working within the Illinois Department of Corrections.

I. Defendants Did Not Show Deliberate Indifference

An inmate's Eight Amendment right is violated by deliberate indifference to a serious medical need only when the treatment amounts to unnecessary and wanton infliction of pain.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Every ache and pain or medically recognized condition involving some discomfort will not necessarily support an Eight Amendment claim.  *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997).  To prove an Eight Amendment violation, the plaintiff must first establish that he had a serious medical need, which is defined as one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for doctor's attention.  *Id.* at 1373.

Once a plaintiff establishes that he had a serious medical need, he must show deliberate indifference by proving the state official knew of and disregarded an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must actually draw that inference.  *Id.* At 837.  Deliberate indifference implies actual knowledge of impending harm easily preventable so that a "conscious culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it."  *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *Citing Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985).

In the instant case, the plaintiff claims that his migraine headaches constitute a serious medical need under the Eight Amendment.  The plaintiff further alleges that defendants were deliberately indifferent to his serious medical needs by ignoring his request to be referred to sick call for his headaches.  The plaintiff has failed to demonstrate that his condition satisfies both prongs of the deliberate indifference test.  The plaintiff has never been diagnosed by medical staff as having migraines. When the plaintiff was examined by Pontiac's staff physician on August 7, 2007, she found no significant abnormalities and her assessment was a "self-reported headache."  The plaintiff's alleged headaches do not appear to rise to the level of a serious medical need as defined under *Gutierrez* because his condition was not diagnosed by a doctor as

5

mandating treatment and it is not so obvious that even a lay person would easily recognize the need for doctor's attention.

Even if the plaintiff's migraines did constitute a serious medical condition, he has failed to prove the defendants' demonstrated deliberate indifference to his condition. The plaintiff alleges he asked the defendant, Beasley to refer him to sick call on two occasions; August 1, 2007 and August 13, 2007. The plaintiff concedes, however, that he did not provide defendant Beasley with the requisite two dollar co-payment voucher required for him to receive Tylenol for his headache.[2] This voucher is required before an inmate is able to obtain non emergency medical care under departmental rule and state statute. Defendant Beasley's failure to provide the plaintiff with Tylenol absent the requisite voucher does not establish deliberate indifference.

The plaintiff further alleges that he asked defendant Cation to refer him to sick call three times for a headache. The plaintiff is only able to identify August 4, 2007 as the specific date on which he asked the defendant to refer him to sick call for his migraines. The medical records reflect that the defendant did in fact place the plaintiff on the sick call list as a result of that request and the plaintiff was later seen by the next available doctor. The plaintiff further alleges there were two other occasions he asked the defendant to refer him to sick call. The plaintiff, however, is unable to establish specific dates for those requests and the medical records do not reflect any other such requests for the defendant Cation beyond August 4, 2007. The medical records do not support the plaintiff's allegation that defendant Cation was deliberately indifferent to his medical needs because he placed the plaintiff on sick call – his only recorded request for medical attention. Furthermore, the plaintiff was being treated regularly by other medical staff personnel for his headaches. Between March 2, 2007 and September 7, 2007, the plaintiff received medical treatment at least five times. That treatment included personal examination by two doctors (one was an optometrist), x-rays and pain medication for his headaches.

The court therefore finds that the defendants, Beasley and Cation were not deliberately indifferent to the plaintiff's medical needs. The plaintiff is unable to satisfy both prongs of the deliberate indifference test. Pursuant to Fed. R. Civ. P. Rule 56(c), the defendants' motion for summary judgment is thereby granted [89].

**It is therefore ordered:**

---

[2] Not only did the plaintiff fail to provide defendant Beasley with the required two dollar co-payment for Tylenol, but he also argued he should not have to pay the voucher. [102, p. 5-6]

1.  The defendants' motion for summary judgment[89] is granted pursuant to Fed. R. Civ. P. Rule 56(c). The clerk of the court is directed to enter judgment in this case in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. Rule 56(c). This lawsuit is terminated in its entirety.

2.  If the plaintiff wishes to appeal this decision, he must file a notice of appeal with this court within 30 days of entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. § 1915(g).

**Entered this 28th day of September 2009.**

s/Harold A. Baker

**Harold A. Baker**
**United States District Judge**
